The first case is MPH Technologies v. Apple, 2025-1069. Mr. Schaffer. Is it Schaffer? Schaffer. Thank you, Your Honor. Good morning, Judge Delorey. May it please the Court. Your Honor, it's Derek Schaffer here on behalf of Appellant MPH. Apple prevailed below only by departing from the correct construction of P terms after the PTO had upheld the claims at issue based on those constructions. That effort, Your Honors, defies not only Apple's own prior position but also the claim terms themselves, together with basic maxims and precedents that teach how they are properly construed, just as a person of ordinary skill in the art would construe them. Simply reading the claims in our submission suffices to refute the District Court's erroneous constructions and to dictate reversal. And let me start, Your Honors, with the IPSEC protocol, which we submit was added as a limitation that does not exist in Claim 949, for the 949 patent. Your Honors, the limitation is imposed. You will see nowhere in the claim. When you get to Claim 2, directly depending from Claim 1, you see that that claim is limited to, quote, using an IPSEC connection. Claim 8 says something like we're in the secure connection is an IPSEC. I mean, that is a little bit of evidence against you. Judge Stoll, you're right that there is a Scribner's error. We can demonstrate how that happened in taking what were European patents, where there could be dependency from multiple preceding claims. And so what happened, and we would call it a Scribner's error, you can see it described in Appendix 2076 and 77 on the ECF docket, Submission 99, Exhibits 2 and 3. You can see, Judge Stoll, how what had been dependent from Claim 2, when it was just being rewritten for the PTO, became dependent from Claim 1. So Claim 1 was written in instead of Claim 2. I'm sorry, it's for U.S. Patent Office. I'm sorry. It's okay. It's okay. I'm asking who did the Scribner's error? It was the applicant, Your Honor. It was on the applicant. And so Claim 8 had been dependent from Claim 2, which explicitly referenced the IPSEC connection. But I'd still submit, Judge, unasserted Claim 8, in our view, cannot overcome what is a clear-cut case of claim differentiation when you get to Claim 2 directly under Claim 1. And if that wasn't clear enough... Let's say, hypothetically, if the specification, like I think the other patents, who had said something like, the secure connection is an IPSEC connection, would that change things in this case for you? Only if you add one other item to the hypothetical, I would say, Judge Stoll. You have to take out the express provisio that you find in Appendix 68, Column 9, Lines 31 to 34. Let me just read it to your honors, okay? Hang on just a second. Let's make sure this is... What page did you just say? It's Appendix 68 for the specification. But I want to just make sure. No problem, Your Honor. And it's Column 9, around 31-34, just at the end of that portion. Right before where it says the Figure 1 is this. Exactly, Your Honor. And here's what it says. Quote, the invention is not restricted to the details of the figures and the accompanying text. That's boilerplate, isn't it? That appears in all patent applications. You might say that, Judge Lurie, except for what follows, okay? And then we get to, or any existing protocols such as the currently standardized IPSEC or IKE. So it's referencing not just IPSEC, but also IKE as another alternative protocol. And those are illustrative, Judge Stoll, of what the claim is not being limited to. You're saying it's really important that in Column 9, if it says specifically that the invention is not limited to IPSEC. Judge Stoll, if I try... Is that the same thing? Is that a yes? Well, I think it is helpful. I don't know that it's... I think there are other things that I would point to, too. But I think that is outcome determinative by itself. I think if I tried to argue to Your Honors, there's an unstated claim limitation, notwithstanding what we explicitly said was not a limitation of the claim, you would vote me out of the courtroom before I sat down. I mean, I hear you. I would say that that is what you're pointing out there looks pretty strong to me. There's also some language in the specification that goes the other way that I'm sure your friend on the other side is going to reference. Like, for example, an essential idea of the invention is to use standard protocol IPSEC in Column 7, Lines 29 through 30, right? I mean, I think that was something that was highlighted. It is, and I understand why he highlights it. I'd note that IPSEC there, even there, is in a parenthetical, but you don't just read that one portion of the specification standing alone, Judge Stoll. That comes many paragraphs in after the abstract has made no reference to it. The object of the invention has made no reference to IPSEC, and it's really one paragraph among many, and it's expressing a preference as the kind of existing expectation. And the title doesn't reference it. The technical field doesn't reference it as well. And one other point, Judge Stoll. But can I ask you something else? Yes. I mean, like, just legally, how should we be thinking about this? And how are you thinking about it? Because what I was thinking, and I want you to know, I want to know what you think of this, is I see the claim, and it says secure connection, and that's pretty broad. If I'm going to read in that secure connection is IPSEC, there better be something pretty strong in the intrinsic evidence for doing so, right? I think that's exactly right. It has to be clear and unambiguous? Clear and unmistakable, yes. And I think, then there's the provisio. Let me point you to Appendix 66, Column 6, Lines 64 to 65, which refers to IPSEC protocols as preferably used. Not exclusively used, but preferably used. Again, making clear that that is a preferred embodiment, not the exclusive embodiment. So, I think you have multiple telltale indications in this specification. And one other thing, if I can gild the lily one bit further, there's Claim 3 of the 949 as well, which refers to the method of Claim 1, but forming the secure message by making use of SSL or TLS protocols. Why don't you move to the 581 patent? If I may, Judge, and if I could just make one point about unique identity, I think it does rise or fall with this question of IPSEC, because the SPI values that the court read into the claim was really a function of IPSEC, a function of that claim limitation that falls away with it. You also have claim differentiation in light of Claim 8, which refers to the SPI values. And you have a disclosed embodiment of Ike with an Ike cookie. You can find that at Appendix 7071, Columns 14, 15, which says instead of SPIs, the so-called Ike cookies are used as translation indices instead. So I don't think you can get to the SPI values as a limitation of the claim once IPSEC is taken out of it. On indefiniteness, I take it that your view is that whatever is in the claim is consistent with something in the specification? Well, I think that's true. And I think the claim is clear-cut about what the other terminal is, it being the third computer after the intermediate computer, after the security gateway. In your view, is the person of ordinary skill in the art reading the specification would see that there's something corresponding to that? That is absolutely my submission, Judge Stoll, but it's backed by Apple's experts. Their person of ordinary skill in the art, you can see it in Appendix 3347 to 3349, testifying what other terminal is. It's exactly what we say it is, the third computer after the intermediate terminal. And you can also see the district court acknowledging expressly at Appendix 2728 that there's this argument based upon what Apple's expert in fact testified to. And then it's just a non sequitur when the court nonetheless says, but I find clear and convincing evidence of indefiniteness. Can I ask you something? I got a little confused there by your answer. Because I'm thinking about indefiniteness and I'm thinking it really largely relates, it's a legal issue largely with some factual underpinning. So my question is, whose expert were you relying on just now in that answer? Apple's expert from the IPR who had testified in the IPR. So that was submitted to the district court, and the district court took cognizance of that at the reconsideration stage, but said I nonetheless find clear and convincing evidence of indefiniteness. But to answer your Honor's question. Could you maybe walk us through the claim or the specification to show in your view how this claim works so that we can understand whether it's the scope of it and whether it's definite or not? Yes, Your Honor. And I'd start with the 581 itself with the expressed claim of it. Where it is, I think, quite clear about what is happening and the interplay between the computers that are described. It's a method for ensuring secure forwarding of a message in a telecommunication network, having at least one mobile terminal and another terminal and a security gateway between. The method comprises and it goes on to describe the mobility and the change of address at the first computer terminal, the mobile terminal. But then when it talks about the other terminal, it's talking about where it is going after passing through the intermediate terminal, essentially the security gateway. And that's how it concludes. The mobile terminal sending a secure message in this secure connection from the second address of the mobile terminal to the other terminal via the security gateway. So Judge Stoll, I'm not feigning incredulity at the indefiniteness argument when I tell you I don't understand how the person of ordinary skill in the art would not understand what other terminal means in that claim. I hear you. You're going a little fast for me. But can I ask you, the mobile terminal sending a secure message in the secure connection from the second address of the mobile terminal to the other terminal, is the secure connection from the second address of the mobile terminal to the other terminal? I think by definition it is because you've had the secure passage through the secure gateway. That's the role that the secure gateway is playing. Whether there's separate securitization of the message en route to the other terminal does not matter to the claim. You could have that or not. But the point is it is a secure message by virtue of the fact that it is passed through the secure, the intervening terminal. So my understanding of why this was thought to be indefinite is that the first part A says establishing a secure connection between a first address of the mobile terminal and the address of the security gateway, right? Yes. Does claim 1E change what that secure connection is? I don't think so, Judge Dole. And I think it's, here's what I mean. I think the person of ordinary skill in the art understands that you necessarily have a secure message once it has gone through the intermediate computer. Serving as a security gateway. We analogize it to if you have a letter in a locked office. The fact that it's entered into, or you could think about it as going on a military guarded passageway. You pass through the gateway. That's secure transport after that, even if you don't have separate military convoy that's accompanying whatever's being delivered. The message is by- You wanted to say some- Can I ask a question? I have a question first. I just want to take you back to the 949 briefly. And that language on claim 9, you were quoting to me. I don't really understand what the purpose of that language is. If it says it doesn't, it's not restricted to current stuff. Do you mean then it could cover not yet invented protocols? I think whatever's known to the art, Judge Hughes. The invention's not focused on the security, on the security- But it has to be known to the art. It has to be known to the art as a means of securing a message. And- What was known in the art except these two protocols? Oh, there are others too, including the ones that I referenced. There was SSL at the time. But not what they're using, apparently. Otherwise, you'd be arguing for infringement based on that. It just seems to me that if you're trying to argue for- You can't be arguing for yet to be invented security protocols because you'd have all sorts of, you know, indefinite or indescription. So it has to be based upon security protocols known at the time. And the patent only talks about IP and IKE. Judge Hughes, my respectful disagreement, and I don't think it matters to the appeal that's before your honors. If you have a newly invented computer, that doesn't mean that a claim can't read on it. There may be things that are peripheral to the invention. And the invention's saying, we're going to take whatever is a standard security protocol. There has to be what the invention claims as an enhancement to that. Namely, using the secure gateway that allows mobility at the first address, even as you're maintaining a security protocol. It's a new security protocol that's never been invented yet. Is it going to be a DOE kind of argument? Well, it could be that, your honor. But I think it also is no different from computers or telephonic devices or whatever it may be that's part of a claim, even if that incidental component may be evolving with technology. Counsel will save three minutes for rebuttal. Thank you, your honors. Mr. Matsui. Thank you, your honor. And may it please the court, Brian Matsui for Apple. I'd like to focus on three issues, the secure terms, indefiniteness, and exchanging keys with one another. But I'm, of course, happy to address any issues or questions the court might have. Starting with the secure terms, the district court correctly construed these terms to require IPSEC. These patents address a specific problem with IPSEC, and they provide a specific solution for IPSEC, which the patent calls enhanced IPSEC. I think if we look at the specification at column four, it identifies problems with IPSEC when a mobile device moves from one location to another. And then at line 11, it says this is problematic. At line 27, it says... How do you deal with... You know, I agree with you. I think this is a really close issue. How do you deal with some of the other language that says, for example, that the invention is not restricted to any existing protocols, such as the currently standardized IPSEC? So I think that that language, that reservation language, needs to be understood in the context of this entire patent, which is talking about the IPSEC problem and the IPSEC solution. And so the real focus is talking about, you know, the currently standardized IPSEC in column nine, which it's talking about. It's reserving the ability that there's improvements or new standards with IPSEC, then that would be applicable. It's the invention would still improve it. And as far as the other protocols, Judge Stoll, this patent does contain other protocols. For example, at line one, it's at... Sorry, column one, line 48, it says that even if some applications already have built-in security protocols, the use of IPSEC further enhances the security. And then it talks at line 66, it's talking about authentication header and ESP, which are additional protocols, which are used with IPSEC. So this reservation language is really talking about protocols that are going to be used with IPSEC. And I think you need to understand that patent law, when someone uses a broader term than their preferred embodiment, or even just, you know, what is disclosed in their specification, their claims use something broader. We don't usually read in to the claim, the more specific protocol. I mean, secure connection is really... No, I completely agree. And so, you know, it's a difficult question, because in a case where you're going to read a particular protocol in, and there's some legal language in the specification, what do I do? And am I supposed to be looking, what is the legal construct I'm looking for? Is it lexicography? Or is it disclaimer? Or is it your view that they've just mentioned, like the district court said, this term is mentioned so many, many times, 200 times the specification uses the word IPSEC, and therefore it should be read into the claim. What is the legal standard? So I don't think that there is a plain and ordinary meaning of a secure connection here. So I think that the job is not a plain and ordinary meaning. I think that the question here is whether or not there isn't, what is the ordinary meaning of secure as used in this... What does the ordinary meaning of secure connection mean, a connection that's secure? I mean, it could mean, but of course, but the patent discloses other secure connections, which are not part of the invention, like I just mentioned at column one, line 48. So a person of ordinary skill in the art, when they look at this patent, will realize that there are multiple possible interpretations of what secure connection could mean. And so this is... I understand, but let me ask you something. Do I understand what the plain and ordinary meaning of a term is by looking at the specification to understand how it uses the term, or do I understand what the plain and ordinary meaning of a term is by looking at it in terms of how a poser, a person of ordinary skill in the art would look at it, and then I turn to the specification? I think that it would be... I think that both are possible. I think that if there was expert testimony... I think that the question of whether or not there is a plain and ordinary meaning usually would have an expert testimony saying that there is only one meaning in this field as to what the term means, but that's not what we have here. And so I think that there is no expert testimony saying that the meaning of secure, but I think that the court can try to discern what the plain and ordinary meaning is if there is one. And here, I don't think there is one, but even if there were one, this is still a case like Vernetics or GP&E. Like Vernetics is a situation where the problem that was identified was the anonymity, and then the solution was the anonymity. And that's precisely what we have here in this situation. It's not just accounting exercise. It's the fact that this patent really is only about IPSEC and improving it because there's this problem that's identified with IPSEC, and then there's a solution with respect to IPSEC. What if you could use the method identified or the invention identified to improve IPSEC here, even if we agree with your argument that that's what it's doing, to improve other security protocols? I mean, that's possible, but it's not what they've claimed, and I think that that's the fundamental problem here is that they didn't say that there's just a problem with respect to security protocols when a device moves. They zeroed in on IPSEC and said that this is a problem with IPSEC, and then they zeroed in and said this is... Is that because it's the way IPSEC functions as opposed to other possible security protocols, or would their invention just apply across the board? I don't think it would apply across the board because if you look at column 1, line 48, it notes that there are other security protocols with respect to applications, and then IPSEC... Is it a technical matter that the invention here doesn't work with other protocols that were in existence at the time of IPSEC, and do you have evidence to support that? I don't know the answer to that, and I don't think I need to know the answer to that because I think that when we look at this patent and the specification, it just zeroes in on IPSEC, and that that's the intent of the invention. It says preferably IPSEC. So the preferably... We would say that that's not to the exclusion of all other protocols. Certainly, Your Honor. When it says preferably IPSEC, you need to look at the entire passage, the entire paragraph that follows, because it's saying preferably the IPSEC connection, and then it goes on and describes all these other requirements, and that's essentially claim one when you look at those requirements in that paragraph. And so it's saying preferably, yes, that that's basically what is preferred. But even if that was some sort of, you know, magic word, that was the same case in GPNE, where there was some language along those lines, and this court still said that the invention was limited to IPSEC. One thing that I'll... To what was disclosed, one thing I'll note on claim two is that there's additional claim scope in claim two. It doesn't just say, let's take everything in claim one and then apply it to IPSEC. It says more than that. It requires the method further comprised forming a secure message by using an IPSEC connection between the first computer and the second computer. I think the best thing that the appellant has going for them on this claim two is that it says NIPSEC. And of course, you're going to come back and say, well, look at claim eight. And I understand that. So I think that at the most it's a draw, but I think that from a claim differentiation standpoint, there is additional claim scope that is there. I would like to just address really briefly the key exchange argument, exchanging keys with one another, because I think that dovetails really well with the secure term in the same patent. If the district court erred by placing too much weight on the specification for the secure claims, then its error is even more apparent with exchanging keys with one another, where it completely eliminated the requirement where the district court held that negotiating and exchanging keys with one another was just establishing a cryptographic key. So it completely eliminated that requirement based upon the notion that it was a goal of exchanging keys with one another to establish cryptographic keys. And so I think that to the extent that the court is going to say that the language of the claims is what is controlling here, that has to also apply with respect to exchanging keys with one another where the prosecution history and the claim itself makes that clear in the 949 patent. Turning to indefiniteness now, I think if we look at the claim itself, it just doesn't provide a person of ordinary skill in the art with any reasonable certainty. Sorry to interrupt you, but how do you respond to the emphasis that Apple had a different perspective and a different proceeding? So I have several responses to that, but the first is when we look at the actual testimony, and a lot of it was cited, it was in the context of an IPR and the discussion is all about what the prior art discloses. So when you look at those pages, it's really talking about, here's what Ishiyama, here's what the prior art discloses. And so it's not a claim construction, it's not a situation where we had a claim construction section where we were talking about the claims. It's all in the context of, here's what this prior art discloses. It has this, it has that. The judge did have an understanding of the claim scope in order to be able to talk about what the prior art taught relative to the scope of the claim, right? In the context of an IPR, certainly yes, but the discussion was purely in the context of what the prior art disclosed. And this was an IPR, of course, where indefiniteness is not something that can be raised, and this court has held that even if a claim is indefinite in an IPR, you're still allowed to show that the prior art discloses what the claim has. And so that's precisely the situation here. This isn't sort of the killer evidence that they make it out to be. Even the point- You take the patent owner's claim construction and then show that that would have been invalid. Right, right. It's not a situation where we had a section where our expert was talking about the claims go back and forth. I think the closest they come as they point to a deposition, which was not actually submitted to the district court, so I think it would be improper for the court to consider it. But even there, it's confusing because it says one option at 10996, and then it's not something that is very crystal clear like you would expect in a declaration. On the indefiniteness- I want to ask you a specific question on indefiniteness. I mean, looking at like figure one of the patent, oh, wait, I'm looking at the wrong patent. Looking at, say, figure two of the patent, I think the claim, when it uses the phrase, it's talking about a first secure connection, I think it's between, I guess, two, and then later, the last element of the claim is we're talking about a connection between one and three through number two. Do you agree with that? I think that this is- I don't know what the- I read the claim, and I think I know what it's saying. I think that that's one possible reading. In fact, we heard a new interpretation from counsel today because my understanding of what they were saying before this court was that the secure connection started at the first computer and went to the gateway in both element A and element E, but now I seem to have heard that maybe in element E, it goes from the first computer to the other terminal. I think that that's the problem here, is that when you look at element A, it says that the secure connection goes from the mobile terminal to the gateway, and then when you look at element E, it says the secure connection from the second address of the mobile terminal to the other terminal via the secure gateway. So a person of ordinary skill in the arts is not going to know. And then the thing- I'm confused, though, because I thought that was the whole point of their invention, was that this device one could move all around and you still could have a secure connection, although through the security gateway to the other computer, number three. I think that that is, but they still have a secure connection that ends at the gateway in element A, and then they have a secure connection that ends at the other terminal if you look at the language of the claim, or as they said in the briefing, that it ends at the gateway. And I think that a person of ordinary skill in the art, when they look at the specification, is going to want some guidance. And what they're going to find out is they're going to find regretful and unartful language. I mean, that's what they have said, that they made some regretful and unartful language. Well, but regretful and artful language doesn't mean a skilled artisan can't understand this by looking at the specification. It seems like the whole point of the invention is to recognize going through a gateway to a second endpoint and being able to move on the first leg of the secure connection from mobile device location to other location. And so the leg from the gateway to the second connection isn't the invention. It's presupposed that that's going to be a secure connection. The whole invention is that first part. Why wouldn't a skilled artisan look at this patent, look at the language, and look at the specification and understand that's what it's about? I mean, it doesn't seem that hard to me. I think that, yes, someone could look at this, the patent, and say that's what was intended. But then looking at the claim language would only lead to the confusion because it talks about the secure connection. I mean, I'm an English major. I could nitpick every single claim language you have to death and make it look like it was nonsensical and you can't figure out what it means. We don't do that in the law. This one seems to me to be clearly inartful, but it seems to me pretty clear that what they're talking about is the invention, that you don't have to re-establish a secure connection every time you move from point A to point B, or frankly, sometimes staying in point A but changing whatever your address is because sometimes that happens. That's the whole point. Everybody knows the second half is a secure connection. The first half is the enhanced part. May I respond, Your Honor? Yes. So I think that the problem is it's more than just inartful language. It uses the term other terminal inconsistently between the claims and the specification. And Apple should be entitled to look at the claims and know what they need to do not to infringe here. And it can't just be a situation where they have to read the specification and say, yes, this is the essence of the invention. When you look at the claims, it doesn't provide guidance. And then a person of learning skill in the art, when they look at the specification, would be confused. Now, yes, they could say that that is the essence, but that's not what the claims themselves say. If there are no further questions, we would ask the court to affirm. Thank you, counsel. Mr. Schaffer has some rebuttals on. Yes, thank you. Judge Stoll, understanding why you see it as a closed case on this question of whether there's a claim limitation that's not in the claim, I think it's not once you realize the effort that Apple is making is to inject a claim limitation that's not there in the claim itself. And when you read the claim language right when you get to claim two, you see that there is claim differentiation and a dependent claim that's specific to use of the IPSEC protocol. And then you get to claim three, and claim three has other protocols, also a dependent claim, but other protocols that are not IPSEC, SSL, and TLS protocols. And then you get to the proviso, which I know, Judge Luria, you said it may seem like boilerplate at the start, but when you go on and it says the invention is not restricted to, it goes on, any existing protocols such as the currently standardized IPSEC or IKE, it is making pellucid that this is not going to be restricted to IPSEC or one or another protocol. And if I tried notwithstanding that to add that claim limitation in order to overcome prior art, Your Honours, wouldn't happen. And I don't think it should work coming from Apple after their invalidation at the IPR failed. I think the claim construction correctly is not confined to IPSEC. And I think you have multiple tell indications of that also when you get to the specification. Then we get to the indefiniteness question. I'm not going to say it any better than Judge Hughes did, but I do want to note, there are very few perfect patent claims that come before the court when you combine that with the specification. And we, when we say that there was an inartful use of other terminal in one portion of the specification are not coming close to conceding that this is the rare case for finding indefiniteness by clearing convincing evidence. I think the claim itself actually is quite clear on this, even by its literal terms, even as parsed by an English major. And I'd emphasize that the connection in 1A is the same one as the connection in 1E that we were talking about, Judge Stoll, where it's talking explicitly about going from one computer to the other terminal via the secure gateway as the intervening checkpoint that establishes the security, even as you have mobility of the first address. And the last point, Your Honors, because Mr. Matsui offered his alternative construction to Your Honor, we don't think that's properly part of the appeal. There's no cross appeal on that, Your Honors. This is not an alternative ground for affirmance. The district court's claim construction of key exchange is no more issue than any other aspect of the district court's claim constructions. And if you were, nonetheless, to entertain this argument coming from Apple, every time an applie comes up before Your Honors. We don't. If we agree with him on security, we don't have to consider this argument anyway, right? That's correct. I hope you don't reach that conclusion.  But then I think these are arguments for just revisiting all aspects of the district court's claim construction. I don't think Your Honor should go down that path. But if you have questions about key exchange, I'd be glad to speak to those. We think the district court got it right and that you wouldn't be exchanging the actual keys. That would defeat the whole purpose of security. You'd be exchanging the information that leads to the keys that are then negotiated and agreed to. Thank you, counsel. Your time has expired. The case is submitted. Thank you, Your Honors.